173 So.2d 520 (1965)
Otis LEE, Appellant,
v.
STATE of Florida, Appellee.
No. G-138.
District Court of Appeal of Florida. First District.
April 6, 1965.
*521 Howard W. Dixon and Tobias Simon, Miami, for appellant.
Earl Faircloth, Atty. Gen., and William D. Roth, Special Asst. Atty. Gen., for appellee.
WIGGINTON, Acting Chief Judge.
Appellant seeks review of an order entered by the trial court denying his petition to vacate and set aside a judgment of conviction and sentence entered against him, which petition was filed pursuant to the provisions of Criminal Procedure Rule No. 1, F.S.A. ch. 924 Appendix.
Appellant was indicted by a grand jury in Bay County, Florida, on September 7, 1961, for the offense of rape. He was convicted by a jury and sentenced to imprisonment for and during the period of his natural life. On appeal to this court, the judgment was affirmed.[1] Review of this court's decision of affirmance was sought by petition for writ of certiorari filed in the Supreme Court of the United States, which petition was denied by memorandum decision without opinion.[2]
After having exhausted all avenues of appeal open to him under the laws of the United States and of the State of Florida, appellant instituted the proceedings under Criminal Procedure Rule No. 1 which culminated in the order which is the subject of this appeal.
By the first point of his brief appellant contends that he was denied rights guaranteed him under the Constitution of the United States when he, a Negro, was indicted by a grand jury, tried and convicted by a petit jury in Bay County, from each of which members of his race were systematically excluded. The arguments and contentions advanced by appellant under this point of his brief are improper and may not be considered on this appeal.
A review of the trial record which was lodged in this court in connection with appellant's original appeal reveals that at no time subsequent to his arrest did appellant make any attack upon the grand jury, the indictment which it returned, or upon the *522 petit jury venire summoned for service in his trial. The record further establishes that the systematic exclusion of members of his race, if such in fact occurred, from the grand jury which indicted him and the petit jury which convicted him, was neither assigned as a ground for a new trial following the jury's verdict of guilty, nor was it assigned as error on the appeal of the judgment of conviction to this court.
In the case of Washington v. State[3] a person convicted of a criminal offense, whose judgment of conviction had on appeal been affirmed by the Supreme Court of Florida, filed a post-conviction proceeding seeking a writ of error coram nobis. Such a proceeding constitutes a collateral attack upon a judgment of conviction rendered in a criminal case in much the same manner as does the proceeding authorized by present Criminal Procedure Rule 1. By his petition the convicted defendant contended that he had been denied the equal protection of the laws guaranteed him by the Fourteenth Amendment to the Federal Constitution by reason of the fact that members of his race had been systematically excluded from the list of petit jurors eligible to serve in the court which tried and convicted him, and had been excluded from the jury which returned the verdict of guilty on which his judgment of conviction was predicated. In affirming the order of the trial court denying the prayer of the petition for writ of error coram nobis, the Supreme Court said:
"While an unlawful discrimination against Negroes because of their race or color practiced by an officer in summoning jurors may render the act of summoning illegal, the panel of jurors as formed might not be illegal. Where a jury that is competent under the law, and that is impartial as required by the Constitution, has been tendered, it may be accepted by the accused, who thereby waives his right to object to the panel on the ground that in summoning the jurors members of his race were discriminated against; there being no duress or other improper influence to embarrass or injure the accused. The jurors that tried the accused were all of the white race; and, if the defendant desired to assert his right to have it judicially determined whether the jury was selected without discrimination on account of race or color, such right should have been asserted before accepting the panel. This was not done and there is no suggestion that the accused was not tried by an impartial jury as required by the Constitution of the state. The accused was represented by competent counsel of his own race who had long been an active practitioner in the courts of the county and the state, and such counsel was of course familiar with the laws governing the rights of the accused, if not also acquainted with the general methods pursued in executing the laws relating to summoning and impaneling juries; the laws of the state not permitting discriminations against any race in selecting jurors.
"Timely and appropriate procedure must be invoked in asserting race discriminations in forming jury panels. Tarrance v. State, 43 Fla. 446, 30 So. 685; Tarrance v. Florida, 188 U.S. 519, 23 S.Ct. 402, 47 L.Ed. 572.
"The writ of error coram nobis is not available as a means of challenging, after a judgment of conviction and of affirmance by the appellate court, the legality of the trial jury that was accepted by an accused, particularly when there is no suggestion of duress or other improper influence exerted in forming or accepting the jury as impaneled, and no suggestion that the accused was not fairly tried by a competent impartial jury."
*523 In the subsequent case of State ex rel. Landis v. Lewis,[4] in a factual setting similar in all material respects to that in the Washington case above cited, the Supreme Court of Florida said:
"This court is committed to the doctrine that where a jury is competent under the law, and is impartial as required by the Constitution, and has been tendered by the state and has been accepted by the accused as the trial jury to try the issues of the accusation made against him, that, in the absence of duress or other improper influence tending to injure the accused, such jury's verdict is, for the purposes of judgment against the accused if found guilty, legally sufficient to support a judgment adjudicating guilt as well as the lawful sentence of the law that is permitted to be imposed pursuant to such adverse adjudication. In short, the verdict and resultant judgment are valid against collateral attack, even though a ground for challenge to the array of jurors, or to some of the individuals composing it, would have been sustained had such challenges been timely made. Washington v. State, 95 Fla. 289, 116 So. 470, text 474, certiorari denied 278 U.S. 599, 49 S.Ct. 8, 73 L.Ed. 528. * * *"
The rule of law enunciated in the Washington and Lewis cases above cited was adhered to by the Supreme Court in the subsequent case of Baker v. State.[5]
Because of appellant's failure to timely raise in the trial court any objection which he had to the manner in which the grand jury and petit jury acting in his case were selected and impaneled, he is foreclosed from raising such question for the first time in a collateral attack upon the judgment of conviction by which he is presently restrained.
In support of his position that the question hereinabove discussed may be raised for the first time in a collateral attack upon his judgment of conviction, appellant cites several cases rendered by courts in the federal jurisdiction.[6] A review of each of the decisions on which appellant relies, with the exception of United States ex rel. Seals v. Wiman which we will presently discuss in detail, reveals that the assault made upon the grand jury and petit jury on the ground of systematic exclusion of Negroes was first made in the trial court. It was the trial court's judgment rejecting such assault, later affirmed by the appellate court of each state, which the federal courts held was subject to collateral attack.
The only case cited by appellant which tends to support his contention is the Seals case.[7] A careful analysis of Seals clearly reveals that the decision is predicated upon controlling factors which are wholly absent in the case sub judice. The Seals case involved a petitioner who had been convicted of rape in Mobile, Alabama, which conviction was affirmed by the Supreme Court of that State.[8] The evidence adduced at the trial of the habeas corpus proceeding established without dispute that no motion based on the exclusion of Negroes from the grand jury or petit jury in Mobile, Alabama, had ever been made prior to the Seals trial, nor had the witnesses who testified ever known of a Negro serving on a Mobile jury in a capital case in which a *524 Negro was a defendant. This evidence conformed to a prior holding by the United States Circuit Court of Appeals for the 5th Circuit in the Goldsby case[9] to the effect that the court takes judicial notice of the fact "that lawyers residing in many southern jurisdictions rarely, almost to the point of never, raise the issue of systematic exclusion of Negroes from juries." An additional factor which influenced the court's decision was its finding that the evidence to support objections to the composition of the jury was entirely unknown to the defendant Seals, who at no time was even consulted by his attorney on the subject. Furthermore, that evidence was not known to the attorney who defended Seals. The court further found that the evidence necessary to support an objection to the composition of a jury was not easily ascertainable, but had been produced in the trial on the habeas corpus petition only as a result of unusual and exhaustive investigation by Seals' present counsel.
Neither of the two foregoing factors which controlled the court's decision in the Seals case is present here. A review of the decisions of this state reveals that an attack on the composition of a grand jury which indicted a Negro for murder, and on the petit jury which tried and convicted him, was first made in this state at the turn of the century in the case of Tarrance et al. v. State.[10] The judicial history of Florida is replete with decisions rendered by the Supreme Court of this state disposing of questions on appeal involving the proposition of whether grand juries and petit juries in particular cases were validly selected, and whether their actions were legally sufficient to sustain a conviction under circumstances where Negroes were systematically excluded therefrom. There can be no question but that Florida does not fall within that category of states referred to by the Circuit Court of Appeals in the Seals case in which the lawyers "rarely, almost to the point of never, raise the issue of systematic exclusion of Negroes from juries."
Furthermore, the record on appeal in this case reveals that the very evidence on which appellant relied in his effort to establish that members of his race have been systematically excluded from both grand and petit juries in Bay County consists of public records which were in existence and available to appellant both prior to and at the time he was indicted and tried for the offense of which he now stands convicted.
There can be no doubt, therefore, but that the two factors which controlled the court's decision in the Seals case, and formed the basis for its holding that failure of Seals to make a timely objection to the jury in his case was not waived and could be raised in a collateral attack upon that judgment in a habeas corpus proceeding, are not present in the case sub judice. It follows, therefore, that the Seals case cannot serve as a precedent in support of the position taken by appellant here.
Aside from the technical aspect of the point hereinabove discussed, we have reviewed the record on appeal with particular attention to the evidence adduced by appellant in his effort to establish the contention that Negroes were systematically excluded from grand and petit juries serving in Bay County prior to and at the time of his indictment and conviction. It is our view that this evidence falls far short of establishing the facts alleged by appellant in support of this position, and the trial court's rejection of this contention is amply supported by the record.
By his second point on appeal appellant contends that the trial court erred in denying his petition to vacate and set aside his judgment of conviction because the proof adduced at the hearing establishes that appellant was denied the right of counsel following his arrest, and prior to the preliminary *525 hearing held on the charge placed against him.
The record reveals that appellant was arrested by the Sheriff of Bay County on the afternoon of June 25, 1961. After being identified by the victim as the one who committed the criminal assault upon her, he was charged in an affidavit and arrested upon a warrant issued by the county judge. After being advised by the judge of his constitutional rights with respect to self-incrimination, appellant was removed to the county jail of Escambia County for safe-keeping because, in the judgment of the Sheriff and the committing magistrate, such action was deemed advisable under the circumstances. Nine days later appellant was returned to Bay County in order to be present at the preliminary hearing scheduled by the committing magistrate to be held on that day. Prior to the hearing appellant procured the services of competent and reputable counsel who thereafter ably represented appellant both in the trial court and through the appellate reviews which he initiated following his conviction.
Appellant has not favored us with the citation of any authorities, and our research has revealed none, which hold for the proposition that one accused of crime will be deprived of constitutional rights unless he is promptly furnished the assistance of counsel from the moment of his arrest forward through the completion of all subsequent proceedings. Although appellant in the case sub judice did not have the assistance of counsel during the first nine days of his incarceration following arrest, he did have the advantage of counsel's services at the preliminary hearing, at his arraignment, and at all critical steps in the proceeding leading up to and following his conviction and sentence. He has failed to demonstrate that he suffered any prejudice or disadvantage of a recognizable nature by not having had the advice and services of counsel prior to the preliminary hearing. Furthermore, the record affirmatively establishes that at no time during his initial incarceration did appellant request the services of an attorney, nor were such services denied him by the officials involved. For the foregoing reasons it is our view that appellant's second point on appeal is without merit and falls short of demonstrating error which would justify reversal of the order appealed.
By his third and last point on appeal appellant contends that his petition to vacate and set aside his judgment of conviction should have been granted because during the trial of the offense for which he was convicted, the court erroneously admitted in evidence a confession made by appellant as to the facts and circumstances surrounding the offense for which he was found guilty. Appellant contends that by admitting this confession in evidence, his rights guaranteed by the Fourteenth Amendment to the Federal Constitution were violated.
A review of the opinion rendered by this court on the first appeal of this case reveals that the principal position taken by appellant was that the trial court erred in admitting over his objection the confession made by him. In reviewing the record this court found that the confession in question had been voluntarily made by appellant under circumstances which rendered it wholly admissible, and that the trial court did not commit error in permitting it to be introduced in evidence by the state during the trial.[11] The validity of the confession having been raised at the trial, and the trial court's ruling admitting the confession in evidence having been reviewed and affirmed by this court on appeal, which decision the Supreme Court of the United States refused to disturb upon petition for writ of certiorari, the question is now res judicata and not open to further consideration.
*526 It is not the function of a proceeding instituted pursuant to Criminal Procedure Rule 1 to relitigate through the same courts the same questions of law which were litigated and disposed of in the original trial proceeding. To permit this to be done would indefinitely suspend the finality of all judgments rendered in criminal cases, and would permit those found guilty of a crime to abuse the judicial process by filing repeated petitions in Criminal Procedure Rule 1 proceedings raising points and questions already considered in and laid to rest by the original judgments of conviction. Such a practice cannot and will not be tolerated.
For the foregoing reasons we find and hold that the action of the trial court in denying the motion to vacate and set aside the judgment of conviction rendered against appellant is free from error, and it is accordingly affirmed.
CARROLL, DONALD K., and RAWLS, JJ., concur.
NOTES
[1] Lee v. State, (Fla.App. 1963) 153 So.2d 351.
[2] Lee v. Florida, 377 U.S. 999, 84 S.Ct. 1924, 12 L.Ed.2d 1049.
[3] Washington v. State, 95 Fla. 298, 116 So. 470.
[4] State ex rel. Landis v. Lewis, 118 Fla. 910, 160 So. 485.
[5] Baker v. State, 150 Fla. 446, 451, 7 So.2d 792.
[6] Bailey v. Henslee, 8 Cir., 287 F.2d 936; U.S. ex rel. Seals v. Wiman, 5 Cir., 304 F.2d 53, cert. denied 372 U.S. 915, 83 S.Ct. 717, 9 L.Ed.2d 722, cert. denied 372 U.S. 924, 83 S.Ct. 741, 9 L.Ed.2d 729; Norris v. State, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed.2d 469; Avery v. State, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed.2d 1244.
[7] Ibid.
[8] Seals v. State, 271 Ala. 142, 122 So.2d 513, 126 So.2d 474, cert. denied 366 U.S. 954, 81 S.Ct. 1909, 6 L.Ed.2d 1246.
[9] U.S. ex rel. Goldsby v. Harpole, 5 Cir., 263 F.2d 71, 81 (5th Cir.1959).
[10] Tarrance et al. v. State, 43 Fla. 446, 30 So. 685.
[11] Lee v. State, supra note 1.